**Bernita Marie ISABEL et al.,**
v.
**UNITED STATES of America,
Defendant.**
Civ. A. No. 10269.

United States District Court
S. D. Texas, Houston Division.
Nov. 30, 1956.

Barker, Barker & Simpson, James D. Simpson, Jr., Galveston, Tex., for plaintiffs.

Malcolm R. Wilkey, U. S. Atty., and Gordon J. Kroll, Asst. U. S. Atty., Houston, Tex., for defendant.

CONNALLY, District Judge.

This is an action instituted by the statutory beneficiaries, Art. 4673, Rev. Civ.Stat. of Texas, to recover for the death of Barney Biff Isabel, which occurred November 22, 1954 when he was shot to death by one Cecil Covington. The action is instituted under the Federal Tort Claims Act, §§ 1346, 2671–2680 of Title 28 U.S.C.A., it being alleged that the United States, through its employees, was negligent under circumstances which would impose liability under State law, § 1346(b) of Title 28 U.S.C.A.

The evidence is without substantial dispute and may be summarized as follows.

Cecil Covington served in the United States Army for a period of approximately one year, being separated in April, 1946. Probably at the time of such discharge, and certainly thereafter, he suffered from a mental disorder described as schizophrenia, unclassified type. From 1947 until April 30, 1954, Covington followed a pattern of spending a matter of a few months out of each year in Veterans Administration and United States Public Health Service hospitals as a mental patient. Frequently he absented himself from such institutions before he was discharged and before his course of treatment had been completed. In every instance he was admitted as a voluntary patient and at his own request. Prior to the incident giving rise to this litigation, as noted hereafter, Covington had never been judicially adjudged to be of unsound mind, and had never been committed to a state or federal institution pursuant to state statute, Arts. 5550–5561, Rev.Civ.Stat. of Texas, Vernon's Ann.Civ.St. Arts. 5550–5561, which would have permitted involuntary confinement.

He was a patient in the Veterans Administration Hospital, Waco, Texas, from late December, 1953 until April 30, 1954. At this time he was undergoing a series of electric shock treatments. He absented himself from a work detail while he and some thirty or forty other patients were under the supervision of one or more hospital aides [1].

Upon Covington's elopement, his next of kin were notified of this fact. Shortly thereafter Covington appeared at the residence of a sister, and made his home with the sister and a brother who lived nearby at intervals during the ensuing months. He secured employment, and appeared to make a reasonable adjustment to his surroundings. These facts were reported to the Veterans Administration Hospital at Waco, leading the authorities there to believe that his con-

---

[1]. Absenting oneself without permission by a patient in this fashion is referred to by the hospital authorities as an "elopement". It is not referred to as an "escape", for the patients, unless committed by proper authority, may not be confined against their will. The hospital personnel who supervise the patients are "aides", not "guards". Apparently when a voluntary patient, suffering from a mental disorder, desires to leave the hospital before his course of treatment has been completed and before maximum recovery, the hospital authorities undertake to argue and reason with him against such a course. However, where he is adamant and insists on leaving, the hospital authorities recognize that he may not be further restrained unless and until it be judicially determined that he (1) is of unsound mind and (2) that his confinement is necessary, as provided by Article 5552 of the Revised Civil Statutes of this State.

dition was satisfactory. With the exception of a single fit of temper a number of years prior to 1954, throughout his many periods of hospitalization, Covington had never shown any homicidal, quarrelsome, aggressive or pugnacious tendencies.

Some seven months after his elopement, and on November 30, 1954, Covington and the deceased Isabel had some disagreement upon the street of La Porte, Texas, resulting from the manner in which one or the other drove his automobile. The two were observed by witnesses to be scuffling although no blows were struck. The deceased broke away and went about his business, entering the post office and returning a few minutes thereafter to his car. At that time Covington was observed to remove from his vehicle a small caliber rifle and to shoot Isabel. As result thereof, the latter's death occurred in the matter of a few minutes.

Plaintiffs allege a number of acts of negligence on the part of the United States in having permitted Covington's escape or elopement. It is contended that there was a failure to have sufficient number of guards; that there was inadequate supervision; and that Covington was allowed too much freedom of movement. In connection therewith, plaintiff alleges that his mental condition was such that hospital authorities should have anticipated harm to others if Covington remained at large.

The facts do not bear out such allegations. Under the circumstances related above, I am unable to find any negligence on the part of the Government which might be considered a proximate cause of the death of Mr. Isabel. It is a complete answer to the plaintiff's position to point out that the Veterans Administration Hospitals could not confine and restrain Covington against his wishes during any of his several periods of hospitalization; and that during the seven or eight years preceding this incident his conduct had never been such as to lead the authorities at any of the hospitals which treated him to expect or anticipate homicidal tendencies.

Having failed by preponderance to prove the Government guilty of any negligence which proximately caused their damages, plaintiffs are not entitled to recover.

The foregoing is adopted as findings of fact and conclusions of law. Clerk will notify counsel who will present decree.